IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| YENIFER RODRIGUEZ, | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. H-09-2005 |
| v. | ) | |
| | ) | |
| OFFICEMAX NORTH AMERICA, | ) | |
| INC. | ) | |
| Defendant. | ) | |

---

## DEFENDANT OFFICEMAX NORTH AMERICA, INC.'S
## MOTION FOR SUMMARY JUDGMENT

---

Respectfully submitted,

**OGLETREE, DEAKINS, NASH
SMOAK & STEWART, P.C.**

J. Alfred Southerland
Ogletree, Deakins, Nash, Smoak &
    Stewart, P.C.
One Allen Center
500 Dallas Street
Suite 3000
Houston, Texas 77002
(713) 655-5753
(713) 655-0020 (facsimile)

Attorneys for Defendant
OFFICEMAX NORTH AMERICA, INC.

## TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDING ..................................................................... 1

STATEMENT OF MATERIAL FACTS ................................................................................... 2

    A.    Plaintiff's Employment History with OfficeMax. .................................................. 2

    B.    Plaintiff's EEOC Charge ........................................................................................ 6

SUMMARY OF THE ARGUMENT ........................................................................................ 6

ARGUMENT ........................................................................................................................... 7

    A.    Statement of the Issues and the Standard of Review. ............................................ 7

    B.    Plaintiff's First Cause of Action for Race and National Origin Discrimination Based on Disparate Impact Fails as a Matter of Law. .................. 8

    C.    Plaintiff's Claim for Sex, Race, and National Origin Discrimination Based on Disparate Treatment Fails Because Plaintiff Cannot Establish the *Prima Facie* Case. ................................................................................................. 10

    D.    Plaintiff's Sexual Harassment Claim Fails As A Matter of Law. .......................... 15

        1.    Plaintiff Was Not Subject to a Tangible Employment Action ................. 15

        2.    Even Under a Hostile Work Environment Theory of Recovery, Plaintiff's Claim Fails Because She Cannot Overcome OfficeMax's Affirmative Defense. ........................................................... 17

    E.    Plaintiff Cannot Establish a Retaliation Claim. ................................................... 19

    F.    Plaintiff's Workers' Compensation Retaliation Claim Fails Because Plaintiff Cannot Prove that Her Termination Was Because She Filed a Workers' Compensation Claim .............................................................................. 22

    G.    Plaintiff's Intentional Infliction of Emotional Distress Claim Cannot Be Maintained Under Texas Law. .............................................................................. 24

CONCLUSION ...................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Gardner-Denver Co.,*
    415 U.S. 36 (1974)..................................................................................8

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)..................................................................................7

*Aryain v. Wal-Mart Stores Texas, LP,*
    534 F.3d 473 (5th Cir. 2008)..................................................................21

*Azubuike v. Fiesta Mart, Inc.,*
    970 S.W.2d 60 (Tex. App.—Houston [14th Dist.] 1998, no pet.) ........................23

*Burlington Indus., Inc. v. Ellerth,*
    524 U.S. 742, 761-62 (1998)..........................................................16, 17

*Burlington Northern & Santa Fe Railway Co. v. White,*
    548 U.S. 53 (2006)..................................................................................20

*Byers v. Dallas Morning News, Inc.,*
    209 F.3d 419 (5th Cir. 2000)..................................................................20

*Casiano v. AT&T Corp.,*
    213 F.3d 278 (5th Cir. 2000)..................................................15, 16, 17, 19

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)..................................................................................7

*Continental Coffee Prods. Co. v. Cazarez,*
    937 S.W.2d 444 (Tex. 1996)..................................................................23

*Creditwatch, Inc. v. Jackson,*
    157 S.W.3d 814 (Tex. 2005)..................................................................24

*Faragher v. City of Boca Raton,*
    524 U.S. 775 (1998)..................................................................................12

*Hoffmann-LaRoche Inc. v. Zeltwanger,*
    144 S.W.3d 438 (Tex. 2004)..................................................................24

*Hunt v. Rapides Healthcare Sys., Llc,*
    277 F.3d 757 (5th Cir. 2001)..................................................................12

*Johnson v. Saks Fifth Ave.,*
    TX, LP, No. H-05-1237, 2007 WL 781946  (S.D. Tex. Mar. 9, 2007) .........9

*Lauderdale v. Tex. Dept. of Crim. Justice, Institutional Div.,*
    512 F.3d 157 (5th Cir. 2007)..................................................................19

*Lee v. Kansas City Southern Ry. Co.,*
    574 F.3d 253 (5th Cir. 2009)..........................................................11, 14

*Little v. Liquid Air Corp.,*
    37 F.3d 1069 (5th Cir. 1994)..........................................................7, 15

*Long v. Eastfield College,*
    88 F.3d 300 (5th Cir. 1996)..................................................................20

*McCoy v. City of Shreveport,*
    492 F.3d 551 (5th Cir. 2007)..................................................................20

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792 (1973)..................................................................................11

*Pacheco v. Mineta,*
    448 F.3d 783 (5th Cir. 2006)..........................................................8, 9

*Pegram v. Honeywell, Inc.,*
    361 F.3d 272 (5th Cir. 2004)..........................................................10, 11, 12

*Roberson v. Alltel Info. Servs.,*
    373 F.3d 647 (5th Cir. 2004) ...................................................................................11
*Rogers v. EEOC,*
    454 F.2d 234 (5th Cir. 1971) ...................................................................................12
*Rutherford v. Harris County, Tex.,*
    197 F.3d 173 (5th Cir. 1999) ...................................................................................11
*Sherrod v. American Airlines, Inc.,*
    132 F.3d 1112 (5th Cir. 1998) .................................................................................22
*Smith v. City of Jackson, Miss.,*
    544 U.S. 228 (2005) ...................................................................................................9
*Stults v. Conoco, Inc.,*
    76 F.3d 651 (5th Cir. 1996) .......................................................................................7
*Terry v. Southern Floral Co.,*
    927 S.W.2d 254 (Tex. App.—Houston [1st Dist.] 1996, no writ) ..........................23
*Tex. Animal Health Com'n v. Garza,*
    27 S.W.3d 54 (Tex. App.—San Antonio 2000, pet. denied) ..................................23
*Tex. Dept of Cmty Affairs v. Burdine,*
    450 U.S. 248 (1981) .................................................................................................11
*Tex. Div.-Tranter, Inc. v. Carrozza,*
    876 S.W.2d 312 (Tex. 1994) ..............................................................................23, 24
*Trico Techs. Corp. v. Montiel,*
    949 S.W.2d 308 (Tex. 1997) ...................................................................................23
*Urbano v. Continental Airlines, Inc.,*
    138 F.3d 204 (5th Cir. 1998) ...................................................................................11
*West v. Maint. Tool & Supply Co.,*
    89 S.W.3d 96 (Tex. App.—Corpus Christi 2002, no pet. ........................................23

**Statutes**
42 U.S.C. § 1981 ..............................................................................................................1
Fed. R. Civ. P. 56 (c) .......................................................................................................7
Tex. Lab. Code Ann. § 451.001 (Vernon 1996) ...........................................................22
Title VII of the Civil Rights Act of 1964 .......................................................................1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

YENIFER RODRIGUEZ,   )
    Plaintiff,    )
          )  CIVIL ACTION NO. H-09-2005
v.          )
          )
OFFICEMAX NORTH AMERICA, )
INC.         )
    Defendant.   )

## OFFICEMAX'S MOTION FOR SUMMARY JUDGMENT

   Defendant OfficeMax North America, Inc. ("OfficeMax") files this Motion for Summary Judgment seeking dismissal of all claims asserted against it by Plaintiff Yenifer Rodriguez ("Plaintiff" or "Rodriguez") in her First Amended Original Complaint ("Complaint"). In support of this Motion, OfficeMax shows the following:

### NATURE AND STAGE OF THE PROCEEDING

   This is an employment action. Plaintiff was formerly employed by OfficeMax as a Cashier/Associate at one of OfficeMax's stores in Houston, Texas. On May 22, 2009, OfficeMax terminated Plaintiff's employment in accordance with its neutral absence-control policy which provides for termination of employment if the employee is unable to return from a leave of absence after six (6) months. At the time of her termination, Plaintiff had been absent from work for over 12 months. According to her testimony, she was still unable to work as of the date of her deposition.

   Plaintiff is a Hispanic (Cuban) female and asserts six separate causes of action in her Complaint: (1) race and national origin discrimination under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and 42 U.S.C. § 1981 ("Section 1981"); (2) sex discrimination

and sexual harassment under Title VII; (3) discrimination under Title VII and Section 1981;
(4) intentional infliction of emotional distress; (5) retaliation; and (6) workers' compensation
retaliation.

On or about July 10, 2008, Plaintiff filed a Charge of Discrimination with the Equal
Employment Opportunity Commission ("EEOC"), alleging sex and national origin
discrimination, and retaliation. She did not assert a claim of race discrimination in her Charge.
On March 26, 2009, the EEOC issued a Notice of Right to Sue. Plaintiff filed this lawsuit on
June 26, 2009. Plaintiff has been deposed, but no other depositions have been taken. Discovery
closed on August 31, 2010. The Joint Pretrial Order is due on January 4, 2011. Trial has not
been set; no jury was demanded in the case.

## STATEMENT OF MATERIAL FACTS[1]

### A.   Plaintiff's Employment History with OfficeMax.

OfficeMax hired Plaintiff in December 2006 as an Associate/Cashier at its retail store in
Naples, Florida. (Ex. A at 33-35.) Upon hire, Plaintiff received an employee handbook that
referenced OfficeMax rules and policies relating to her employment. (Ex. A at 38.) Plaintiff
understood that one such OfficeMax policy related to the prohibition of harassment. (Ex. A at
82.) Plaintiff also understood that there was a toll-free tip line available to employees to report
issues and problems at work, and that OfficeMax had an "open door" policy that encouraged
employees to raise any issues and concerns with management. (Ex. A at 77-79, Depo. Ex. 16.)

In August 2007, Plaintiff transferred to an OfficeMax store in Houston, Texas. (Ex. A at
42-45.) On November 7, 2007, just two months after Plaintiff's transfer, her supervisor, Store
Manager Bill McConnell, issued a verbal warning to Plaintiff for excessive tardiness. (Ex. A at

---

[1]The evidence and unpublished cases referenced herein are attached to OfficeMax's Appendix of Summary
Judgment Evidence.

87-89, Depo. Ex. 18.) McConnell addressed the fact that Plaintiff had been late for her shift or had called in absent at least seven times during that two month period, and on three occasions, was late by over an hour. Plaintiff admitted that she understood OfficeMax's attendance policy, that she was late on the days in question, and that she received discipline due to her violation of that policy. (Ex. A at 80-81, 87-89, and 96-97, Depo. Ex. 18.)

Bryan Bowe ("Bowe") became Plaintiff's Store Manager at the Houston store on January 14, 2008. (Ex. A at 179.) On January 28, 2008, Plaintiff received a second warning for attendance because she was late for her shift three times in the same week. (Ex. A, Depo. Ex. 19.) In her deposition, Plaintiff admitted that she was late on the days in question and received written discipline. Plaintiff also admitted that she understood she could be terminated if her attendance issues continued. (Ex. A at 90-91.)

On February 20, 2008, because of her continued attendance issues, Plaintiff was asked to sign and acknowledge her understanding of the OfficeMax attendance and punctuality policy. (Ex. A at 91-92, Depo. Ex. 20.) Despite her awareness of the policy, and OfficeMax's efforts to correct these attendance issues, Plaintiff's attendance issues continued over the next two months. On April 25, 2008, OfficeMax issued a final written warning to Plaintiff for excessive tardiness. (Ex. A, Depo. Ex. 21.)[2] While Plaintiff claims she did not receive the final written warning and did not discuss her attendance with Bowe at that time, she does admit that she was late on at least some of the days listed in the final written warning. (Ex. A at 93-94.) Plaintiff does not complain about the discipline actions for poor attendance in this lawsuit. (*See* Plaintiff's First Amended Original Complaint.)

---

[2] According to Plaintiff's time clock records, between September 5, 2008, and her first written warning, Plaintiff worked 44 shifts and was late for at least 19 of those shifts. Plaintiff was tardy five times in the two-week period before her second written warning and was tardy eight times between March 1, 2008, and her final written warning. (*See* Declaration of Wendy O'Neill at Ex. B, ¶ 3.)

After several more instances of tardiness, Plaintiff called in sick to work on May 19, 2008, because she was "tired." The next day, on May 20, 2008, Plaintiff was called into Bowe's office to discuss her attendance issues. Nick Ayers, the Assistant Store Manager ("Ayers"), also attended the meeting. (Ex. A at 151-55.) Plaintiff did not like the fact that she was being counseled again regarding her attendance, despite the fact that her attendance was unacceptable. Following the meeting, as Plaintiff was walking back to her workstation from the bathroom, she fainted. (Ex. A at 50-52.) Plaintiff was taken to the hospital as a precaution but was released the same day. (Ex. A at 55.) Plaintiff went out on medical leave the next day and filed for workers' compensation benefits as a result of the injuries she allegedly suffered when she fainted. Plaintiff never returned to work again at OfficeMax and, according to her deposition testimony, is still physically unable to work. (Ex. A at 66, 70, and 211.)

In late May 2008, while out on workers' compensation leave, Plaintiff contacted OfficeMax Human Resources Manager Wendy O'Neill ("O'Neill")[3] to discuss her workers' compensation claim. (Ex. A, Depo. Ex. 23; Ex. B ¶ 4.) During that discussion, for the first time, Plaintiff complained about her supervisor, Bowe.[4] Specifically, Plaintiff complained that during the May 20 meeting, Bowe yelled at her, told to her to shut up, and stated he would not honor her request for time off work. Plaintiff also told O'Neill that Bowe told her that he likes young girls and can have any young girl he wants. Plaintiff also claimed that two to three months prior, Bowe had come up behind her and touched her on the arm, and that Bowe offered to buy her lunch using his credit card several times. Plaintiff indicated that another cashier, Dhalia Manny

---

[3] Plaintiff stated in her deposition that she spoke to Wendy Filla ("Filla"), OfficeMax District Manager, instead of O'Neill. However, the evidence indicates Plaintiff spoke to O'Neill. (Ex. B ¶ 4, Attach. 1.)

[4] Plaintiff alleged in her deposition that she also complained about Bowe in February 2008 when she called Filla to request a transfer. (Ex. A at 139.) Plaintiff claimed she told Filla that Bowe did not respect her and she wanted a transfer. (Ex. A at 144-45.) Plaintiff admitted that she did not report any harassment or discrimination to Filla. (Ex. A at 139, 144-45.) OfficeMax denies that Plaintiff called Filla in February of 2008.

("Manny"), was aware of these matters and had actually witnessed some of the alleged conduct. (Ex. A at 189; Ex. B, ¶¶ 4-8, Attach. 1.)  Plaintiff did not tell O'Neill that Bowe had touched her anywhere other than her arm.  She also did not tell O'Neill that Bowe had made fun of her accent or that he had made any comments about her race or national origin, nor did Plaintiff complain about her lunches, her pay, or the hours she was working.  (Ex. B, ¶¶ 4-8, Attach. 1.)

The next day, O'Neill initiated an investigation into Plaintiff's claims.  (Ex. B, ¶ 7.) O'Neill interviewed Bowe, who denied touching Plaintiff inappropriately or making any derogatory or harassing comments to Plaintiff.  Bowe admitted that he bought lunch for store associates from time-to-time as a form of recognition or appreciation, giving the employees his debit card to make the purchase.  He extended this same offer to Plaintiff occasionally.  Bowe explained that when he and Ayers met with Plaintiff on May 20, 2008, regarding her continued attendance issues, Plaintiff became upset and started to argue with him, and that both he and Plaintiff became frustrated during the discussion.  (Ex. B, ¶ 7, Attach. 1.)

O'Neill also spoke with Ayers and Manny, the alleged witnesses to some of Plaintiff's complaints.  Neither Ayers nor Manny corroborated Plaintiff's complaints, and to the contrary, Manny said that Bowe was nice to Plaintiff.  Based on these interviews, O'Neill concluded that Plaintiff's complaints were unsubstantiated.  (Ex. B, ¶¶ 7-8, Attach. 1.)

OfficeMax's neutral absence-control policy provides that the maximum amount of leave available to employees is six months.  At the conclusion of a six-month absence, employment is terminated unless an employee requests an extension of leave as a reasonable accommodation or unless prohibited by law.  (Ex. B, ¶ 10, Attach. 2.)  On March 25, 2009, and again on April 8, 2009, Plaintiff received letters from OfficeMax regarding her continued leave.  OfficeMax informed Plaintiff that her employment would be terminated in accordance with OfficeMax's

leave policy unless she contacted the Company to discuss her return to work. Plaintiff never

contacted OfficeMax, and on May 22, 2009, after more than 12 months of absence, OfficeMax

terminated her employment. (Ex. A at 72-77, Depo. Exs. 13, 14, and 15; Ex. B, ¶ 10.) At the

time Plaintiff's employment was terminated, Plaintiff had not been released to work by her

doctors. Plaintiff had still not been released to work as of the date of her deposition in April

2010. (Ex. A at 68-69.)

**B.     Plaintiff's EEOC Charge.**

On July 10, 2008, Plaintiff filed a Charge of Discrimination with the EEOC. (Ex. A,

Depo. Ex. 23.) Plaintiff asserted that she was discriminated against because of her "sex, female

and my national origin, Hispanic (Cuban)," and that she was retaliated against because she

refused Bowe's sexual advances. *Id.* Plaintiff did not assert a claim of race discrimination in her

Charge. *Id.* A Notice of Right to Sue was issued by the EEOC on March 26, 2009. (Ex. E.)

**SUMMARY OF THE ARGUMENT**

Plaintiff's first cause of action for race and national origin discrimination based on

disparate impact fails because disparate impact was not alleged in Plaintiff's EEOC charge and

because Plaintiff has failed to identify a facially neutral policy or practice. Plaintiff's claim for

race, national origin, and sex discrimination fails because Plaintiff did not suffer an adverse

employment action, and even if she could establish she suffered an adverse employment action,

Plaintiff has no evidence that others similarly situated were treated differently. Plaintiff's sexual

harassment claim must be dismissed because Plaintiff did not suffer a tangible employment

action and, further, OfficeMax exercised reasonable care to prevent and correct any sexual

harassment, and Plaintiff failed to take advantage of preventative and corrective opportunities

provided by OfficeMax. Plaintiff's claim for retaliation cannot survive because Plaintiff again

cannot establish that she suffered an adverse employment action, nor can she prove any causal connection between her refusal of her supervisor's alleged sexual advances and the alleged adverse employment actions.  Plaintiff's claim for intentional infliction of emotional distress fails because it is based on the same conduct alleged in Plaintiff's other claims.  Finally, Plaintiff was terminated pursuant to OfficeMax's neutral absence-control policy, and thus, Plaintiff cannot prove that she was retaliated against for filing a workers' compensation claim.

## ARGUMENT

**A.      Statement of the Issues and the Standard of Review.**

OfficeMax is entitled to summary judgment if the evidence shows "that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56 (c).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  OfficeMax bears the initial burden of "informing the Court of the basis of its motion," and identifying portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Plaintiff must then "go beyond the pleadings" and identify "specific facts" in the record "showing that there is a genuine issue for trial." *Id.* at 324.  "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' ... by 'conclusory allegations,' ... by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  Rather, to meet this burden, the nonmovant must "identify specific evidence in the record," and "articulate the precise manner" in which that evidence supports his claims." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996).

As explained below, there are no genuine issues of material fact, and OfficeMax is entitled to judgment as a matter of law.

**B.    Plaintiff's First Cause of Action for Race and National Origin Discrimination Based on Disparate Impact Fails as a Matter of Law.**

Plaintiff's first cause of action for race and national origin discrimination based on disparate impact fails because disparate impact was not alleged in Plaintiff's EEOC charge and because Plaintiff fails to identify a facially neutral policy or practice.[5]  As the Fifth Circuit has held:

> Title VII creates a federal cause of action for two largely separate theories of discrimination, disparate treatment and disparate impact.  Disparate-treatment discrimination addresses employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin....  Disparate-impact discrimination, on the other hand, addresses employment practices or policies that are facially neutral in their treatment of those protected groups, but, in fact, have a disproportionately adverse effect on such a protected group.

*Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006) (internal citations omitted), *cert. denied*, 127 S. Ct. 299 (2006).

Plaintiff's first cause of action is based on disparate impact discrimination.  Plaintiff alleges that OfficeMax engaged in unlawful employment practices and that these practices "had a disparate and adverse impact" on her.  (*See* Plaintiff's First Amended Original Complaint, ¶¶ 8-9).[6]  However, Plaintiff's EEOC charge contained no allegation relating to a **facially neutral** employment policy or practice that had a disproportionate impact on Plaintiff's race or national origin.  Plaintiff's EEOC charge instead made allegations relating to Bowe's treatment

---

[5] Plaintiff's EEOC charge only asserted national origin discrimination; it did not include race discrimination. (Ex. A, Depo. Ex. 23.)  As a general rule, under Title VII, a plaintiff cannot bring claims in a civil lawsuit that were not included in her EEOC charge. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974).  Consequently, to the extent any of Plaintiff's race claims arise under Title VII, they should be dismissed as a matter of law.

[6] Plaintiff also claims in her first cause of action that OfficeMax "violated Plaintiff's rights under 42 U.S.C. Section 1981."  Plaintiff, however, fails to identify specifically what rights were violated.  (*See* Plaintiff's First Amended Original Complaint, ¶ 10.)  Given that most of the allegations in Plaintiff's Complaint allege disparate treatment, OfficeMax will address the general allegation in Paragraph 10 of the Complaint with Plaintiff's disparate treatment claims.

of her in two isolated instances.[7] (Ex. A, Depo. Ex. 23.) A disparate impact investigation could not reasonably have been expected to grow out of Plaintiff's EEOC charge. *See Pacheco*, 448 F.3d at 792 (affirming the district court's dismissal of the plaintiff's disparate impact claim, because a disparate impact investigation could not reasonably have been expected to grow out of an EEOC charge that only alleges disparate treatment). As such, a disparate impact claim was not within the scope of Plaintiff's EEOC charge, and this Court should dismiss Plaintiff's disparate impact claim for failure to exhaust administrative remedies. *Id.* at 791-92.

Even if Plaintiff could establish that her disparate impact claim is not barred, Plaintiff has failed to produce any evidence of a facially neutral policy or practice that would support a disparate impact claim. "To establish a disparate impact claim, a plaintiff must show that there is a specific, facially neutral employment practice, that there is a statistically significant disparity among members of different groups affected by the practice, and that there is a causal nexus between the facially neutral employment practice and the statistically significant disparity." *Johnson v. Saks Fifth Ave.*, TX, LP, No. H-05-1237, 2007 WL 781946 at *23 (S.D. Tex. Mar. 9, 2007). "[I]t is **not enough to simply allege that there is a disparate impact on workers**, or point to a generalized policy that leads to such an impact." *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 241 (2005) (emphasis added). Plaintiff's disparate impact claim fails on the merits.

---

[7] In her deposition, Plaintiff identified two instances where Bowe made fun of her accent and the way she spoke English and yelled at her in front of other co-workers. (Ex. A at 217-18.) The first instance allegedly occurred about a week before Plaintiff fainted in the store. (Ex. A at 147-50, 183-84.) The second instance occurred during the discussion in Bowe's office on the day Plaintiff fainted. Plaintiff stated these were the only two times Bowe allegedly made comments about her accent and English. (Ex. A at 154-55, 195, and 217-18.)

OFFICEMAX'S MOTION FOR SUMMARY JUDGMENT                                        -9-

**C.   Plaintiff's Claim for Sex, Race, and National Origin Discrimination Based on Disparate Treatment Fails Because Plaintiff Cannot Establish the *Prima Facie* Case.**

Plaintiff's third cause of action is presumably based on disparate treatment discrimination under Title VII and Section 1981.[8]  While Plaintiff's Complaint does not identify how OfficeMax discriminated against Plaintiff "in connection with the compensation, terms, conditions and privileges of employment" or "classified" her to deprive her of opportunity provided to other similarly situated employees, (*See* Plaintiff's First Amended Original Complaint, ¶¶ 13-14), Plaintiff made the following general allegations in her Complaint and/or in her deposition that arguably relate to her disparate treatment claims:  (1) on two occasions, Bowe allegedly yelled at Plaintiff and made fun of her accent and the way she spoke English, said Hispanics were "good for nothing," told her to shut up, told her she was not a good employee and he was going to find a way to fire her, and told her he was never going to give her vacation days (Ex. A at 147-50, 154-55, 183-84, 195, 217-18); (2) Bowe allegedly prohibited Plaintiff from taking her lunch "on time" more than ten times and denied her lunch one time (Ex. A at 103-04, 109); (3) Bowe offered his credit card to Plaintiff so she could buy lunch (Ex. A at 110-11); (4) Bowe denied Plaintiff vacation days (Ex. A at 195-97, 254-57); (5) Bowe told Plaintiff and another employee that he could have any of the young girls he wanted (Ex. A at 100-01); (6) Plaintiff was required to work more hours than she wanted five or six times (Ex. A at 161-62); and (7) Bowe did not give Plaintiff a pay increase.  (Ex. A at 199.)  Much of this alleged conduct is also the basis of Plaintiff's other claims.  Not all of this conduct was reported to OfficeMax nor was all of this conduct alleged in Plaintiff's EEOC charge.

---

[8] The Fifth Circuit Court of Appeals has held that "race discrimination claims brought pursuant to Section 1981 are governed by the same evidentiary framework applicable to employment discrimination under Title VII." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281 n.7 (5th Cir. 2004).  As such, OfficeMax does not address Plaintiff's Section 1981 and Title VII claims separately.

"The Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004).  When the plaintiff offers no direct evidence of disparate treatment, her claim is governed by the *McDonnell Douglas'* burden-shifting framework.  *Tex. Dept of Cmty Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).  Under this framework, Plaintiff must first establish the *prima facie* case of discrimination.  To establish a *prima facie* case of sex, race, or national origin discrimination, Plaintiff must "demonstrate that (1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) others similarly situated were more favorably treated." *Rutherford v. Harris County, Tex.*, 197 F.3d 173, 185 (5th Cir. 1999); *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).  Once a plaintiff has established the *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment action.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir.), *cert. denied*, 525 U.S. 1000 (1998).  If the employer can prove a legitimate nondiscriminatory explanation, the burden shifts back to the employee to prove that the employer's explanation is merely pretext.  *Tex. Dept of Cmty Affairs v. Burdine*, 450 U.S. at 255-56.

Here, Plaintiff fails to make a *prima facie* case for sex, race, or national origin discrimination.  Specifically, she cannot demonstrate the third and fourth elements of the *prima facie* case.  The third element of the *prima facie* case requires Plaintiff to prove that she suffered an adverse employment action.  *Rutherford*, 197 F.3d at 185.  Adverse employment actions are "ultimate employment decisions" such as hiring, granting leave, firing, compensating, and promoting.  *Pegram*, 36 F.3d at 282.  "Our court has a strict interpretation of the adverse employment element of Pegram's *prima facie* intentional discrimination case.  Under Title VII

principles, which inform our treatment of section 1981 claims, an employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." *Id.* (*quoting Hunt v. Rapides Healthcare Sys., Llc*, 277 F.3d 757, 769 (5th Cir. 2001)).

Despite Plaintiff's various allegations about Bowe's conduct, none of that conduct is an adverse employment action as a matter of law. Offering to buy an employee lunch is not an adverse employment action that affected Plaintiff's job duties, compensation, or benefits. Even the alleged comments by Bowe in two isolated instances, including those comments regarding Plaintiff's accent, that Hispanics were "good for nothing," that he could have all the young girls he wanted, that Plaintiff was not a good employee, and that Bowe would find a way to fire Plaintiff, do not equate to an adverse employment action. While OfficeMax denies that Bowe made these statements, even if Bowe made these statements, they did not affect Plaintiff's job duties, compensation, or benefits. As the Supreme Court has said, "'simple teasing,' offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citations omitted). *See also Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir. 1971), *cert. denied*, 406 U.S. 957 (1972) ("[M]ere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee" would not sufficiently alter terms and conditions of employment to violate Title VII.).

Plaintiff's allegation that she did not get her lunch "on time" is not, as a matter of law, an adverse employment action either. As explained below, OfficeMax policy does not provide for "scheduled" meal breaks such that an employee may be "late" to lunch. (Ex. B, Attach. 4.) However, even taking Plaintiff's allegations as true, on all but one occasion Plaintiff received a meal break. (Ex. A at 108.) She did not lose any benefit or suffer an adverse employment action

simply because there was an alleged delay in taking her meal break. Even the one, isolated alleged denial of a meal break cannot be considered an ultimate employment decision, and thus, an adverse employment action.

As to working long hours, Plaintiff's own testimony refutes any argument that when she worked long hours she suffered an adverse employment action. Plaintiff testified that she had to work long hours five or six times in the four months that Bowe was her supervisor. (Ex. A at 161-62.) More importantly, she testified that she **agreed** to work extra hours when asked and that when she did not want to work extra hours, she was not required to work. (Ex. A at 161-62.) In these circumstances, working longer hours is not an adverse employment action. Even if Plaintiff were forced to work more hours five or six times, that is not an ultimate employment decision that would be deemed an adverse employment action as a matter of law.

Plaintiff also claims that she suffered an adverse employment action because she did not get a pay increase from Bowe. (Ex. A at 199.) A careful review of Plaintiff's testimony, however reveals that her own testimony does not support her claim. Plaintiff does not actually allege she was denied a pay increase; she simply states when she asked Bowe about her pay, he told her she got paid what she was supposed to get paid. (Ex. A at 36 and 199.) As such, Plaintiff cannot establish that there was any employment action relating to her pay, let alone an adverse employment action.

Finally, Plaintiff cannot establish that she suffered an adverse employment action when she was allegedly denied vacation time by Bowe. OfficeMax policy clearly provides that to request and receive vacation time (known as "YTO" or "Your Time Off"), employees must complete an OfficeMax YTO request form and provide that form to a member of management before the schedule is written for the week the employee is requesting time off of work. (Ex. B,

Attach. 2.)  Plaintiff admits that was the procedure for requesting vacation time, and the evidence demonstrates she had used that procedure before.  (Ex. A at 257; Ex. B, Attach. 3.)  Plaintiff also admits that she never actually completed the form requesting certain vacation days or provided the form to Bowe or another member of management at the store, yet was denied those vacation days.  Instead, Plaintiff claims that she asked Bowe four times about vacation days and that Bowe responded that he would "check" if she had accumulated vacation time.  Bowe allegedly never got back to Plaintiff on that issue.  (Ex. A at 257-58.)  Thus, by Plaintiff's own testimony, she did not actually request vacation days, nor was she actually denied any vacation days.  As such, there was no adverse employment action relating to the denial of vacation time as a matter of law.

Even if Plaintiff could show that some or all of the alleged incidents were adverse employment actions, as to all of Plaintiff's allegations, Plaintiff has no evidence that others similarly situated were treated differently.  The fourth element of the *prima facie* case requires that Plaintiff identify other employees who were similarly situated but treated differently.  "The employee must demonstrate that ... he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances."  *Lee*, 574 F.3d at 259.

As to the allegations relating to vacation time and Bowe offering Plaintiff his credit card for lunch, Plaintiff herself admits she does not know whether others received vacation time when she allegedly did not, or whether Bowe offered his credit card to others.  (Ex. A at 111, 254.)  As to Plaintiff's claim that she did not get a pay increase, Plaintiff cannot demonstrate that other employees received increases when she did not.  As to the allegation that Plaintiff took her lunch "late," Plaintiff offers no evidence that she was treated any differently than others under the

OfficeMax meal break policy.[9]  For all of Plaintiff's allegations, she does not have any evidence that others similarly situated were treated differently.  Moreover, Plaintiff does not ever identify how any of these alleged incidents, assuming they are true, were related to Plaintiff's race, national origin, or sex.  Plaintiff's bare assertion that these incidents occurred because of Plaintiff's race, national origin, or sex are not sufficient to establish discrimination.  *See Little*, 37 F.3d at 1075 (summary judgment burden is not "satisfied with 'conclusory allegations,' ... by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence").  Because Plaintiff cannot meet the *prima facie* case of discrimination based on race, national origin, or sex, these claims should be dismissed as a matter of law.

**D.     Plaintiff's Sexual Harassment Claim Fails As A Matter of Law.[10]**

Plaintiff's second cause of action for sexual harassment fails because Plaintiff cannot establish that she suffered a tangible employment action nor can Plaintiff defeat OfficeMax's affirmative defense under a hostile work environment theory.

1.     <u>Plaintiff Was Not Subject to a Tangible Employment Action.</u>

In determining sexual harassment under Title VII, courts first must determine whether the complaining employee suffered a tangible employment action.  *Casiano v. AT&T Corp.*, 213 F.3d 278, 283 (5th Cir. 2000).  If an employee suffers a tangible employment action, the case is classified as "quid pro quo" and the "court must determine whether the tangible employment action suffered by the employee resulted from his acceptance or rejection of his supervisor's

---

[9] OfficeMax's Meal and Rest Break policy provides that employees receive a 30-minute unpaid meal break if they work a five-hour shift or longer.  Generally, the policy provides that employees receive their meal break between the 2nd and 5th hours of work.  The policy specifically provides that business needs may impact the ability to provide meal breaks from time to time.  (Ex. B, Attach. 4.)  A review of the time punch records for Plaintiff reveals that between January 2008 and May 20, 2008, she took her lunch within the parameters specified in the OfficeMax policy.  (Ex. B, ¶ 12, Attach. 4.)

[10] Plaintiff's second cause of action is for "sex discrimination and sexual harassment."  To the extent her second cause of action relates to discrimination under a disparate treatment theory, Defendant addressed those claims in Section C above.  Thus, Defendant will only address sexual harassment in this Section.

alleged sexual harassment." *Id.* If the employee did not suffer a tangible employment action or cannot show a nexus between the tangible employment action and the harassment, then the alleged sexual harassment is viewed as a "hostile environment" case. *Id.* at 284. Here, Plaintiff cannot create a genuine issue of material fact regarding whether she suffered a tangible employment action.

"A tangible employment action constitutes a significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761-62 (1998). Plaintiff has not alleged any conduct or actions that created a significant change in her employment status.[11] Plaintiff consistently received her meal break within the time parameters specified by OfficeMax's meal policy. (Ex. B, ¶ 12, Attach. 4.) Even assuming Plaintiff's allegations are true, taking a "late" lunch or failing to take a lunch on one day, did not "constitute a significant change in employment status." *Id.* Likewise and for the reasons discussed above, none of Plaintiff's allegations relating to her pay, working longer hours, or her vacation requests could be construed as employment actions that created a **significant** change in her employment status. Thus, Plaintiff has suffered no tangible employment action as a matter of law.

---

[11] Plaintiff does not and has never alleged that her employment termination was related to the alleged sexual harassment. Plaintiff alleges instead that her termination was in retaliation for filing a worker's compensation claim. As such, OfficeMax does not address whether Plaintiff's discharge was a tangible employment action under Title VII. Further, even if her discharge was a tangible employment action, Plaintiff cannot prove a nexus between the alleged sexual harassment and her termination. As later discussed in Section F, Plaintiff was terminated pursuant to OfficeMax's neutral absence-control policy. There is no evidence that her termination related to her worker's compensation claim or to her claim of sexual harassment.

2.   Even Under a Hostile Work Environment Theory of Recovery, Plaintiff's Claim Fails Because She Cannot Overcome OfficeMax's Affirmative Defense.

Plaintiff cannot prove she suffered a tangible employment action. Thus, her sexual harassment claim can only proceed as a hostile environment claim, and even under that theory of recovery, Plaintiff's claims must be dismissed as a matter of law because Plaintiff cannot overcome OfficeMax's affirmative defense.

In a hostile environment harassment case, Plaintiff must show that, if proved, the actions alleged against the supervisor would constitute severe and pervasive harassment. If Plaintiff meets this burden of proof, the employer is liable unless the employer can prove "(1) the employer exercised reasonable care to prevent and correct promptly any such sexual harassment and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Casiano*, 213 F.3d at 284 (*citing Burlington Indus.*, 524 U.S. at 765).

In support of her sexual harassment claim, Plaintiff cites to most of the same alleged conduct discussed in Section B above. Plaintiff also alleges that Bowe touched her breasts, buttocks, and hair on numerous occasions, and that Bowe asked Plaintiff for a sexual favor. (Ex. A at 131-32, 202-03.) The extent of the sexual touching and the sexual favor were never reported to OfficeMax and were not alleged in the EEOC charge. (Ex. A, Depo. Ex. 23; Ex. B, ¶¶ 5-6, Attach. 1.) Further, many of Plaintiff's other allegations were not reported to OfficeMax, were not alleged in her EEOC charge, were not specifically identified in her Complaint, and were only identified through Plaintiff's deposition. *Id.* While OfficeMax denies that Bowe sexually harassed Plaintiff and created a hostile work environment for Plaintiff, Plaintiff's claim fails for the simple fact that Plaintiff cannot overcome OfficeMax's affirmative defense.

OfficeMax has a clear policy prohibiting harassment in the workplace. That policy declares that OfficeMax has "zero tolerance" for harassment and provides a variety of resources for employees who believe they are being harassed, discriminated, or retaliated against or who have knowledge of such behavior towards others. (Ex. B, Attach. 5.) OfficeMax reiterates this policy from time to time and did so in June 2007. (Ex. B, Attach. 5.) OfficeMax also has an "open door" policy and poster that encourages employees to discuss with any member of management work-related concerns, problems, or questions, and provides contact information for various management employees. (Ex. A, Depo. Ex. 16.) Plaintiff admits she received a copy of the harassment policy when she was hired and understood that policy prohibited harassment. (Ex. A at 38, 82.) Plaintiff also admits she saw the open door policy posted at the OfficeMax store and more importantly, understood that there were ways to report concerns or problems to management at OfficeMax. (Ex. A at 77-79.) Plaintiff, however, failed to avail herself of these resources for reporting her alleged concerns and problems.

The first time Plaintiff ever directly or impliedly reported sexual harassment to OfficeMax was in late May 2008, **after** she had gone out on medical leave.[12] (Ex. A at 188-89; Ex. B, ¶ 4.) As soon as OfficeMax became aware of Plaintiff's allegations, the Company immediately responded and conducted a full investigation including interviewing witnesses identified by Plaintiff. OfficeMax was unable to substantiate Plaintiff's complaints. (Ex. B, ¶¶ 4-8, Attach. 1.) Further, Plaintiff never talked to Bowe again, never saw Bowe again, never came to the store again, and never worked again at OfficeMax. Plaintiff never returned from her

---

[12] Even then, Plaintiff did not report all of the alleged sexual harassment to OfficeMax. For instance, Plaintiff's allegation that Bowe asked Plaintiff for a sexual favor was not reported to OfficeMax until her deposition in this case in April 2010. (Ex. A at 204.) Plaintiff did not report any touching to OfficeMax, other than that Bowe touched her on the arm, until Plaintiff's EEOC charge when she simply claimed Bowe "would lean up against me in a sexual manner." (Ex. A, Depo. Ex. 23; Ex. B ¶ 6, Attach. 1.) Plaintiff did not make any claims about her pay or working long hours to O'Neill or in her EEOC charge. (Ex. A, Depo. Ex. 23; Ex B, Attach. 1.)

leave and, in fact, even as of the date of her deposition, had not been released to return to work by her doctors. (Ex. A at 69-70, 159, 211.)

Plaintiff claims she called OfficeMax District Manager Wendy Filla in February of 2008 to ask about a transfer, but states she did not report any alleged harassment during that discussion. (Ex. A. at 138-39.) While OfficeMax disputes that Plaintiff called Filla regarding a transfer, even if she did call Filla, none of her alleged statements to Filla at the time "raised one specter of direct sexual overtures, even implicitly." *Casiano*, 213 F.3d at 287. Further, when the sexual harassment allegedly continued after Plaintiff called Filla, Plaintiff made no further attempt to contact Filla or anyone else at OfficeMax to report this behavior until after she was out on leave. (Ex. A at 139, 189.) "In most cases, as here, once an employee knows his initial complaint is ineffective, it is unreasonable for him not to file a second complaint, so long as the employer has provided multiple avenues for such a complaint." *Lauderdale v. Tex. Dept. of Crim. Justice, Institutional Div.*, 512 F.3d 157, 164-65 (5th Cir. 2007).

OfficeMax exercised "reasonable care to prevent and, if not prevented, to correct promptly any sexually harassing behavior by supervisory personnel" and Plaintiff "failed to take adequate and appropriate advantage of any preventative or corrective opportunities provided by" OfficeMax or to avoid the harm otherwise. *Casiano*, 213 F.3d at 286. Thus, there are no genuine issues of material fact as it relates to OfficeMax's affirmative defense, and Plaintiff's claim for sexual harassment should be dismissed as a matter of law.

**E.    Plaintiff Cannot Establish a Retaliation Claim.**

To establish a *prima facie* case of retaliation, a plaintiff must prove: (1) that she engaged in activity protected by Title VII; (2) that she suffered an adverse employment action; and (3) that a causal connection exists between the protected activity and the adverse employment

action. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000); *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996). If an employee proves the *prima facie* case, the burden of production shifts to the employer to demonstrate a legitimate, non-retaliatory reason for its action. If the employer meets its burden, the employee must then prove that the employer's reason is a pretext for the actual retaliatory reason. *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).

Plaintiff's Complaint alleges that she was retaliated against by Bowe when she refused his sexual advances. [13] The alleged retaliatory conduct is essentially the same conduct alleged by Plaintiff in her discrimination cause of action. (Plaintiff's First Amended Original Complaint, ¶ 11). As with Plaintiff's other claims, she cannot meet the elements of the *prima facie* case.

Assuming that Plaintiff engaged in a protected activity when she refused Bowe's sexual advances, for the same reasons discussed in Section C, Plaintiff cannot prove that she suffered an adverse employment action. An adverse employment action in the retaliation context is defined as any action that "a reasonable employee would have found ... [to be] materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006). Adverse employment actions must be viewed in context. *Id.* None of the conduct alleged by Plaintiff, even taken as true, would have dissuaded a reasonable worker from making or supporting a charge of discrimination; Plaintiff's allegations do not rise to the level of "material adversity." "Instead they fall into the category of 'petty slights, minor annoyances, and simple lack of good manners' that employees regularly encounter in the workplace and which the Supreme Court has recognized are not actionable retaliatory conduct."

---

[13] She does not allege that any of her discipline or her discharge were retaliation because she refused Bowe's sexual advances. (*See* Plaintiff's First Amended Original Complaint, ¶ 17.)

*Aryain v. Wal-Mart Stores Tex., LP*, 534 F.3d 473, 485 (5th Cir. 2008) ("[t]he materiality requirement reflects the importance of separating 'significant from trivial harms.'").

Plaintiff received her meal breaks within the parameters specified in the OfficeMax meal policy. She cannot prove she had a scheduled lunch break and that she did not get to that scheduled lunch break on time. (Ex. B, ¶ 12, Attach. 4.) According to Plaintiff's own testimony, she received her meal breaks on all but one occasion. (Ex. A at 103-04, 108-09.) Even if she took a "late" lunch as alleged and missed one lunch, that conduct would not have dissuaded a reasonable employee from making or supporting a charge of discrimination. Neither would offering to buy Plaintiff lunch, even if that offer was unpleasant or unwelcome. (Ex. A at 110-11.) Moreover, Plaintiff alleges that Bowe made her take her lunch "late" and offered her his credit card **well before** she refused Bowe's alleged sexual advances. (Ex. A at 100-11.)

According to Plaintiff's own testimony, she never requested specific vacation days off that were subsequently denied. (Ex. A at 257-58.) Similarly, Plaintiff admits she never requested a pay increase that was subsequently denied by Bowe. (Ex. A at 36, 199.) Plaintiff simply alleges because she never received a pay increase during her year and a half at OfficeMax that was retaliation for refusing Bowe's advances. (Ex. A at 36.) Plaintiff cannot even establish that Bowe was the decision maker for a pay increase. As to working longer hours, again Plaintiff's own testimony is that she agreed to work extra shifts and hours. (Ex. A at 161-62.) None of this alleged conduct would have dissuaded a reasonable worker from making or supporting a charge of discrimination, and therefore does not rise to the level of an adverse employment action.

Finally, the comments and threats allegedly made by Bowe on two isolated instances one week before and the day of Plaintiff's fainting episode (assuming Bowe made them) were not of

the nature that would rise to the level of an adverse employment action. (Ex. A at 217-18.) Even the alleged threat to fire Plaintiff is not an adverse employment action; Plaintiff admittedly had been disciplined three times for acknowledged attendance issues and continued to have attendance issues right up to the day she fainted. (Ex. A, Depo. Ex. 18, 19, 20, 21.) Plaintiff acknowledged that she could be terminated for her continued attendance issues. (Ex. A at 90-91.) Thus, a reasonable employee within this context would not have been dissuaded from making or supporting a charge of discrimination based on the alleged comments which, at best, clearly fall into the category of trivial slights rather than significant harms.

Plaintiff cannot prove that "but for" her refusal of Bowe's advances, the alleged retaliatory conduct by Bowe would not have occurred. *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998) ("The ultimate issue of retaliation requires the employee to prove that the adverse employment action would not have occurred 'but for' the protected activity.") As such, Plaintiff cannot meet the *prima facie* case of retaliation, and her claim should be dismissed as a matter of law.

## F.   Plaintiff's Workers' Compensation Retaliation Claim Fails Because Plaintiff Cannot Prove that Her Termination Was Because She Filed a Workers' Compensation Claim.

Under Section 451.001 of the Texas Labor Code, an employer "may not discharge or in any other manner discriminate against an employee" for filing a workers' compensation claim in good faith. Tex. Lab. Code Ann. § 451.001 (Vernon 1996). The *prima facie* case of retaliation under Section 451.001 of the Texas Labor Code consists of the following elements:  (1) the plaintiff engaged in a protected activity; (2) an adverse employment action occurred; and (3) there was a causal connection between participation in the protected activity and the adverse employment decision. *West v. Maint. Tool & Supply Co.*, 89 S.W.3d 96, 105 (Tex. App.—

Corpus Christi 2002, no pet.) (*citing Azubuike v. Fiesta Mart, Inc.*, 970 S.W.2d 60, 65

(Tex. App.—Houston [14th Dist.] 1998, no pet.)).

 Once the employee has established the *prima facie* case, it is the burden of the employer

to rebut the alleged improper termination by showing that there was a legitimate reason behind it.

*See Terry v. Southern Floral Co.*, 927 S.W.2d 254, 257 (Tex. App.—Houston [1st Dist.] 1996,

no writ). Plaintiff cannot meet the *prima facie* case in this instance because she cannot prove any

causal connection between her protected activity of filing a workers' compensation claim and her

termination, and further, she cannot overcome OfficeMax's legitimate reason behind her

termination. "To prevail on a section 451.001 claim, the employee must demonstrate some

causal link between the employer's action and the fact of her workers' compensation claim...."

*Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 451 (Tex. 1996). An employee must

prove that "but for" his filing of a workers' compensation claim, the discharge would not have

occurred when it did. *Trico Techs. Corp. v. Montiel*, 949 S.W.2d 308, 312 (Tex. 1997);

*Tex. Animal Health Com'n v. Garza*, 27 S.W.3d 54, 60 (Tex. App.—San Antonio 2000, pet.

denied). A plaintiff's subjective belief that she was fired in retaliation for filing a workers'

compensation claim is not competent summary judgment evidence. *See, e.g., Tex. Div.-Tranter,

Inc. v. Carrozza*, 876 S.W.2d 312, 314 (Tex. 1994).

 Plaintiff cannot establish that "but for" her filing a workers' compensation claim, her

discharge would not have occurred when it did. Plaintiff went out on leave on or about May 20,

2008. Plaintiff was out on leave for over 12 months. OfficeMax's leave policy clearly provides

that the maximum amount of leave available to employees is six months. (Ex. B, Attach. 2.)

Plaintiff's employment was terminated pursuant to OfficeMax's neutral absence-control policy.

(Ex. B, ¶ 4.) There is no evidence of any connection between Plaintiff's termination and her

workers' compensation claim. Further, there is no evidence that Plaintiff was terminated for anything other than pursuant to the policy, and Plaintiff cannot overcome OfficeMax's legitimate, nondiscriminatory reason for her discharge. *See Tex. Div.-Tranter, Inc.*, 876 S.W.2d at 312 ("Uniform enforcement of a reasonable absence control policy . . . does not constitute retaliatory discharge."). Plaintiff's claim for workers' compensation retaliation should be dismissed.

**G.      Plaintiff's Intentional Infliction of Emotional Distress Claim Cannot Be Maintained Under Texas Law.**

Plaintiff's fourth cause of action is for intentional infliction of emotional distress. Plaintiff admits that this claim is based on the same allegations and incidents that make up Plaintiff's other claims. (Ex. A at 243-44.)

A claim for intentional infliction of emotional distress cannot be maintained in Texas if the facts in support of this claim are the same facts used to support a plaintiff's other claims. "[I]ntentional infliction of emotional distress is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005). "Where the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available." *Hoffmann-LaRoche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004).

The gravamen of Plaintiff's complaint here is sexual harassment and discrimination. The conduct underlying Plaintiff's sexual harassment and discrimination claim is the same conduct underlying her intentional infliction of emotional distress claim. Plaintiff has not alleged any additional facts in support of her intentional infliction of emotional distress claim. Therefore, Plaintiff's fourth cause of action should be dismissed.

## CONCLUSION

For these reasons, OfficeMax respectfully requests that the Court grant this Motion for Summary Judgment in its entirety, dismiss Plaintiff's case against the company, award costs and attorneys' fees, and award any other relief to which OfficeMax may be entitled.

Respectfully submitted,

/s/ J. Alfred Southerland
J. Alfred Southerland
Ogletree, Deakins, Nash, Smoak &
     Stewart, P.C.
One Allen Center
500 Dallas Street
Suite 3000
Houston, Texas 77002
(713) 655-5753
(713) 655-0020 (facsimile)

Attorneys for Defendant
OFFICEMAX NORTH AMERICA, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of September, 2010, I will electronically file the

foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification

of such filing (NEF) to the following:

Ijeoma Opara
4420 F.M. 1960 W
Suite 103
Houston, Texas  77068
(281) 895-8003

/s/ J. Alfred Southerland
J. Alfred Southerland
Ogletree, Deakins, Nash, Smoak &
  Stewart, P.C.

Attorney for Defendant
OFFICEMAX NORTH AMERICA, INC.